# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JEFFREY A. ABLES,**

      **Petitioner,**                          **Civil No. 2:11-CV-00124**
                                            **Crim. No. 2:09-CR-273**
      **v.**                               **Judge Smith**
                                            **Magistrate Judge King**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this action to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate*, Doc. No. 34, Respondent's *Answer in Opposition*, Doc. No. 41, and *Supplemental Response*, Doc. No. 47, Petitioner's *Reply,* Doc. No. 44, and the exhibits of the parties. Petitioner's *Motion to Suppress Evidence* and *Request for Discovery*, Doc. Nos. 36, 45, are **DENIED.** Petitioner's unopposed *Motion to File Supplemental Brief*, and *Motion to File a Second Supplemental Amendment,* Doc. Nos. 49, 52, are **GRANTED**. Petitioner's *Motion to Withdraw Grounds Three and Seven*, Doc. No. 48, is **GRANTED.** Petitioner's *Request for an Evidentiary Hearing and Appointment of Counsel*, Doc. No. 51, will await consideration by the District Judge of this *Report and Recommendation.* For the reasons that follow, the Magistrate Judge **RECOMMENDS** that counsel be appointed to represent Petitioner at an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his attorney failed to file an appeal or to consult with him after sentencing regarding the filing of an appeal. The Magistrate Judge **FURTHER RECOMMENDS** that Petitioner's

remaining claims be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

Petitioner's underlying December 16, 2009, criminal conviction on a charge of receipt of visual depictions of child pornography in interstate commerce in violation of 18 U.S.C. § 2252(a)(2) is the result of his negotiated guilty plea. *See Plea Agreement,* Doc. No. 12; *Judgment*, Doc. No. 27. On February 17, 2010, Petitioner was sentenced to 120 months in prison to be followed by five years of supervised release. *Judgment,* Doc. No. 27.

On February 9, 2011, Petitioner filed the *Motion to Vacate* pursuant to 28 U.S.C. § 2255, alleging that he was denied effective assistance of counsel because his attorney failed to attack a search warrant and search of his room, failed to file a timely appeal and provided inaccurate advice regarding his sentence.[1] Respondent contends that Petitioner's claims are waived and without merit.

## PROCEDURAL DEFAULT

Respondent contends that Petitioner has procedurally defaulted his claims by failing to file a direct appeal. However, all of Petitioner's claims have been raised in the context of a claim of ineffective assistance of counsel, which claim is properly addressed in § 2255 proceedings. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Petitioner also alleges that his failure to file a direct appeal is a consequence of the improper failure on the part of his attorney to file a timely appeal or to consult with him regarding the filing of an appeal after sentencing. For the reasons set out *infra*, this Court concludes that the resolution of this claim requires an evidentiary hearing. The

---

[1] As noted, Petitioner has withdrawn habeas corpus claims three and seven. *See Motion to Withdraw*, Doc. No. 48.

Court thus will address the merits of Petitioner's claims.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises various issues regarding the alleged ineffective assistance of his counsel. In response, Respondent has provided the affidavit of David Graeff, Esq., Petitioner's defense counsel. *Affidavit of David Graeff*, attached as Exhibit A to *Respondent's Answer in Opposition*, Doc. No. 41. That affidavit reads in relevant part as follows:

> 3. My representation of Mr. Ables began on 11/5/09 [sic] and concluded on 2/17/10.
>
> ***
>
> 6. . . . My first visit with Mr. Ables in the Franklin County Jail was on 11/2/09. During my representation of him, I visited him on ten separate occasions beginning on 11/2/09 and concluding on 2/10/10. The minimum amount of time in each conference was one hour and the maximum was 2.50 hours.
>
> 7. I realized immediately that Mr. Ables was what we call in the business a "high maintenance" client. He was very demanding and it was obvious he needed a great deal of personal attention. This is the reason why I visited numerous times.
>
> 8. With respect to his direct appeal rights, it has been my practice with every client. . . to inform them before the Sentencing Hearing of his or her right to appeal.
>
> 9. With respect to Mr. Ables, I have a specific independent recollection of informing him of his right to appeal on 2/10/10, approximately a week before his scheduled Sentencing Hearing. The reason was I had filed four objections to the Final Presentence Report. I informed Mr. Ables that if the Sentencing Judge denied the objections, then it would be best if we did appeal. If we won any of the objections, and his sentence was departed or reduced from the applicable guideline range of 151-188 months, then I would recommend that he not appeal. Mr. Ables understood what we were doing with respect to the objections, and it was clear to me that he understood the right to appeal.
>
> 10. At the Sentencing Hearing, it is my recollection that the Judge sustained one objection, partially sustained another objection, and, as

a result, departed from the 151 level down to a Guideline range where he received a sentence of 120 months (108-135; Level 29), or 31 months below what the final PSR had recommended (151-188).

11. Subsequent to the sentence, the Trial Judge, as always, asked if Mr. Ables wished to appeal his sentence. At that time, I recommended to Mr. Ables, in confidence, that he should not appeal. Mr. Ables then responded to the Trial Court stating, "No." The Trial Court then responded by stating that if he changes his mind within the next 10 days, let your attorney know, and the Clerk will file the Notice of appeal.

12. After the Sentencing Hearing, Jeffrey Ables wanted to speak to me in the holding cell. I waited 45 minutes to speak to him, but the Marshal told me that it could not be done because of the docket that the Judge had at the time and that no Marshals were available to let me in.

13. Throughout the course of my entire representation of Mr. Ables, he told me that a close family member had complete authorization to discuss the case with me. Her name is Diane Britch. . . . Britch called me frequently, whenever Mr. Ables needed either to see me, or some further information. In every case, I returned her call, and provided the information for Mr. Ables.

14. On February 22, 2010, five days after the sentencing of Mr. Ables, I received a phone call from Diane Britch. My notes to that phone call are attached as Number 1 to this Affidavit.

15. My notes reflect "phone call Diane Britch, Jeff will refuse treatment at Fort Devons; said will be out in six years, eight months, told her originally facing 151 months." Interpreting that phone message it means that she called me and after I discussed possible treatment at a location called Fort Devons, Massachusetts, Diane Britch said that Jeff would refuse his treatment and that with his sentence he was going to be out in six years and eight months. I told her that he was originally facing 151 months.

16. Also, with respect to the Sentencing Hearing, I have attached as Number 2 , the document I received of the Notice of Sentencing. On it I remember paying the $100 Clerk's Office fee, after Diane Britch sent me a check for paying the $100. In the lower right is my own writing which states, "Appeal, NO."

17. This reflects my recommendation, and also the fact that Mr. Ables, at the Sentencing Hearing, stated he did not wish to appeal.

18. In the above notation call of Diane Britch, at no time did Mr. Ables tell her he wished to appeal.

4

19. If Diane Britch, who had authorization and POA, had informed me that Mr. Ables wished to appeal, I would have done so immediately.

20. In addition to the above call, there were also several calls from Diane Britch regarding Jeffrey Ables after the Sentencing Hearing.

21. In one of those calls, Mr. Ables could not provide a document reflecting the $100 assessment charge. I went to the Clerk's Office, got a copy, and forwarded it on to Diane Britch so that Mr. Ables would have that document.

22. In that call, and in every call I received from her, at no time did Jeffrey Ables ever express a desire to directly appeal.

23. With respect to the $100 assessment fee, that I paid on February 17th, Attachment 3 is the envelope postmarked February 12th, from Diane Britch, plus notes from her to me.

24. Finally, with respect to my personal experience with direct appeals, in 1972, after becoming an attorney, I clerked for approximately six months for a Justice on the Ohio Supreme Court, and became aware immediately of the importance of the right to direct appeal. Since that time, I have been engaged in appellate work. Presently, approximately one-third of my cases consist of direct appeals, including Court appointed direct appeals. . . .

***

26. . . . Jeffrey Ables had a clear means of communication through his family member, this was accomplished repeatedly, and if Jeffrey Ables had requested I appeal his case, either through phone communication or mail, I would have done so.

***

28. Shortly after I entered representation on this case, I received a call from Michael Hunter, the U.S. Attorney handling his case. We arranged for a meeting, and at the meeting he provided me with full discovery. This was on 11/5/2009.

29. Included in that discovery was the search warrant document and an Affidavit, and also the documents reflecting Mr. Ables' Waiver of his Miranda Rights.

30. With respect to the search warrant, I reviewed it and, in my opinion, it is one of the more detailed and better search warrants that I have seen in my years of practice.

31. I would consider filing a Motion to Suppress the Search Warrant frivolous, and actually detrimental to Jeffrey Ables' case.

32. In addition, Mr. Hunter supplied me with the progress report reflecting Mr. Ables' Waiver of his Miranda rights.

33. In that summary, it states that "Detective Penwell asked Jeffrey if he would like to speak with Detective Penwell and Jeffrey stated 'yes,' that he would be willing to speak with Detective Penwell at this time. Detective Penwell read Jeffrey a Miranda Rights Waiver and had him follow along as it was read to him. Jeffrey stated verbally 'yes' and visually by nodding his head that he understood his rights and signed the waiver agreeing to speak with Detective Penwell." Mr. Ables then detailed his involvement in the offense on which he, subsequently, appeared before the District Judge.

34. With respect to both of these issues, I discussed this with Mr. Ables. He understood, and wanted to focus on receiving the best possible sentence that could be implemented.

35. After reviewing the discovery again, and the search warrant, it is my belief from my knowledge of the case law, and in speaking with Mr. Ables that it would be detrimental to his case for me to file any kind of Motion dealing with the suppression of the search warrant or suppression of hi oral statements.

***

40. Also, in the Final Presentence Report, with regard to acceptance of responsibility, it states he takes responsibility for his actions in the offense and knows what he did was wrong. "The defendant expressed his involvement has impacted his life. He explained he is glad he was caught by law enforcement." PSR at ¶26.

41. In conclusion, in my contact with Mr. Ables, I found him to be articulate, intelligent, very demanding, and fully capable of comprehending everything that I discussed with him legally.

*Id.* Attached to the affidavit are the notes and the itemization of time referred to by Petitioner's attorney.

Petitioner complains, first, that his attorney was ineffective for having failed to file a motion to suppress evidence seized during a search of his room and to suppress statements made by Petitioner to police. *Petition; Supplemental Brief,* Doc. No. 49. Specifically, Petitioner notes that

the warrant authorizing the search of 2730 Moundcrest Street, Columbus, Ohio, where Petitioner

rented a room at the time,[2] failed to include his name but instead identified only the owner of the

premises, Teresa Kimble.   Seized during that search was a laptop computer, located under

Petitioner's mattress, which contained incriminating evidence.  Petitioner argues that he was vested

with a reasonable expectation of privacy in his room and that police therefore should have obtained

a separate search warrant before searching his room.   Their failure to do so, Petitioner argues,

rendered the search of his room warrantless and, because Petitioner did not consent to the search of

his room, unconstitutional.   Petitioner also asserts that his statements to police made after this

allegedly unlawful search should have been suppressed despite his waiver of his rights under

*Miranda v. Arizona*, 384 U.S. 436 (1966).   In his *Motion to Suppress Evidence*, Doc. No. 36,[3]

Petitioner alleges that he did not adequately understand the rights he was waiving when he signed

the *Miranda* rights waiver form, that police did not properly explain those rights to him  and that his

signature on the waiver of rights form was obtained through indirect coercion by the Franklin

County Sheriff's Department.  *Id.*  Petitioner also asserts that he "was not in a sufficiently stable

physical or mental condition" to understand the rights waived by him.  *Id.*

The Fourth Amendment to the United States Constitution protects "[t]he right of the people

to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"

and provides that "no warrants shall issue, but upon probable cause, supported by oath or

---

[2]There was no written rental contract governing Petitioner's use of the room and, in lieu of rent, Petitioner assisted Kimble with home deliveries of sporting equipment. *Petition*, at 5.

[3] A motion to suppress evidence is a pre-trial motion that cannot be considered in post conviction proceedings.  Rule 12(b)(3)(C), Federal Rules of Criminal Procedure.  Liberally construing Petitioner's pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the Court construes Petitioner's motion to suppress as a memorandum in support of his *Petition*.

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. In order to determine whether a search warrant sufficiently describes the location or premises to be searched, a court must consider whether the description adequately enables police to locate and identify the premises or whether it is reasonably probable that another premise could be mistakenly searched. *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002). The validity of a warrant authorizing the search of a residence containing separate dwelling areas "depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Maryland v. Garrison*, 480 U.S. 79, 99 (1987). The United States Supreme Court has recognized the need to allow latitude for "honest mistakes" made by officers "in the dangerous and difficult process of making arrests and executing search warrants." *Id*. at 87 (footnote omitted).

Respondent has supplemented the record to include a copy of the search warrant at issue, which identifies the place to be searched as the residence of Teresa Kimble, 2730 Moundcrest Street, Columbus, Ohio, a single family dwelling "with white siding, blue shutters, and a white front door with the numbers 2730 clearly marked to the left of that door." *See Warrant to Search*, attached as Exhibit A to *United States Response to Supplement the Record*, Doc. No. 47. Although the warrant does not identify Petitioner or separately specify his room as a place to be searched, police obtained probable cause for the search of the entire residence during the course of an internet investigation which established Teresa Kimble, the owner of a single family dwelling, as the subscriber for the IP address at issue.[4] *See, e.g., United States v. Burke*, 252 Fed. Appx. 49, 55 (6th Cir. Oct. 23,

---

[4] See also Rule 41 of the Federal Rules of Criminal Procedure, which provides, *inter alia*, that a search warrant "must identify the person or property to be searched, identify any person or property to be seized" and that a warrant

2007)(unpublished)(noting probable cause for search warrant under similar circumstances). The record indicates that requesting or searching law enforcement personnel had no reason to know, prior to obtaining or executing the search warrant, that Petitioner rented a room from Kimble or that he was using her IP address to access child pornography.[5] Contrary to Petitioner's argument here, the fact that the warrant identified Kimble rather than Petitioner does not invalidate the search or the warrant.

The cases referred to by Petitioner in support of his Fourth Amendment claims fail to support those claims.[6] For example, Petitioner refers to *United States v. Conner*, No. CR-2-10-332, 2011 WL 3359570 (S.D. Ohio Aug. 3, 2011), in which an officer (who was also involved in Petitioner's case) obtained a warrant for the search of a single residence after his investigation revealed that a computer assigned to the IP address at that home had accessed child pornography. After law enforcement personnel arrived at that location, the owner of the home informed them that her uncle resided in the garage and paid her $200.00 rent. After conducting a protective sweep of the garage with the consent of the uncle and observing a computer in plain view in the garage, law enforcement

---

> may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant.

Rule 41(e)(2)(A), (B), Federal Rules of Criminal Procedure.

[5] Petitioner acknowledges, "detectives did not have any knowledge that Ables resided there until they entered the residence." *Supplemental Brief*, Doc. No. 49.

[6] Petitioner refers to various cases in support of his claims throughout his pleadings. For purposes of brevity, this Court will not separately address each of these cases; however, this Court has carefully considered all of Petitioner's filings and concludes that none of the cases cited by him, except with respect to his claim of ineffective assistance of counsel in connection with the filing of an appeal, supports habeas corpus relief.

personnel obtained a second warrant for a search of the garage. These facts are not analogous to the facts presented in this action.

Other courts that have considered the lawfulness of a search under similar circumstances have concluded that the search was constitutional. For example, in *United States v. Nichols*, 344 F.3d 793, 797-98 (8th Cir. 2003), the United States Court of Appeals for the Eighth Circuit affirmed the constitutionality of a search, pursuant to a warrant, of a locked room rented by the defendant from the owner of a single family residence:

> [T]here were no markings on his doors listing it as an apartment, it was only a room without a kitchen or bathroom, and the post office did not have any apartments registered at that address.
>
> Even if we did consider Nichols's room as a separate apartment, we cannot say that its search was not supported by the warrant. The search warrant authorized the search of the residence at 9380 Golden Gate, and specifies that the area to be searched included the "attached rear garage converted into room." The description of a garage converted to a room was sufficient to inform the searching officers as to what area to search, particularly in light of the scant evidence that Nichols's room was known by any other name or description.

*Id*. at 798. *See also United States v. Sullivan*, No. 11-cr-98-1-JMH, 2011 WL 5187630, at *2 (E.D. Ky. Oct. 31, 2011)(citing *United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991)); *United States v. Hoskins*, No. 10-20677, 2011 WL 4062307 (E.D. Mich. Sept. 13, 2011)(affirming constitutionality of a search of a single family residence with three separate apartments where officers did not know about separate residences within the building and had expected only a single family dwelling); *United States v. Flyer*, No. CR051049TUC-FRZ(GEE), 2006 WL 2590460, *4 (D. Ariz. May 26, 2006)(same).

In the case presently before this Court, Petitioner does not allege that he paid rent or had a

written rental agreement, nor is there any indication that Petitioner kept his room locked or marked his room as a separate apartment. There is no evidence that his room was accessed through a separate entry or that the room included a kitchen or even a refrigerator. There is simply nothing in the record to even suggest that the executing law enforcement personnel had reason to know that Petitioner maintained a separate residence within what appeared to be a single family home. Under these circumstances, the Constitution did not require a separate warrant to search Petitioner's room and seize his computer, or that the search of Petitioner's room constituted a warrantless search and seizure. It follows that Petitioner has failed to establish the ineffective assistance of counsel based on his trial attorney's failure to file a motion to suppress in this regard.

Petitioner also argues that his attorney should have filed a motion to suppress statements made by Petitioner to police. He concedes that he executed a waiver of his rights under *Miranda* and subsequently admitted to downloading and viewing child pornography using his laptop computer. He also acknowledged that he was a registered sex offender and had an addiction to child pornography. *Petition,* p. 15. Petitioner argues that these statements were inadmissible because they were obtained subsequent to the unlawful search of his room. *Id.* at 13. Because the Court concludes that the search of Petitioner's room was not unconstitutional, this argument must fail.

To the extent that Petitioner argues that his attorney should have filed a motion to suppress his statements as coerced or obtained in violation of *Miranda,* that argument also fails. The allegations raised by Petitioner in his *Motion to Suppress Evidence* are without support. The record indicates that defense counsel made a reasonable strategic decision, after reviewing discovery in the case, that a motion to suppress would not have been successful or in Petitioner's best interest. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options

are virtually unchallengeable[.]" *Strickland v. Washington,* 466 U.S. 668, 690 (1984).

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.*

Petitioner also contends that law enforcement personnel violated his First and Fourth Amendment rights when they accessed information stored on his computer and seized his computer. *Petition*, pp. 17-18. Moreover, Petitioner argues, law enforcement personnel violated the Privacy Protection Act ("PPA") and the Electronic Communications Privacy Act ("ECPA"). He specifically analogizes his computer to a closed container that police illegally searched. These arguments are not persuasive.

A summary of the facts of this case, as presented by the prosecution at Petitioner's guilty plea hearing and agreed to by Petitioner, is helpful to the consideration of Petitioner's claims in this regard:

> On October 13th of 2009, Franklin County Sheriff's Detective Marcus Penwell was engaged in an internet investigation and observed IP address 65.60.241.216 as a download candidate for suspected child pornography. Detective Penwell made a direct connection to IP address 65.60.241.216 and observed 17 files with

titles typically associated with child pornography. One of the files observed was named "10 yo girl and boy play sex. . ." Detective Penwell was able to obtain a partial download of the file which contained a movie of a prepubescent girl engaged in sexual intercourse with what appeared to be a prepubescent boy. Investigation revealed that the IP address is owned by Wide Open West, and the subscriber information for that IP address came back to a 2730 Moundcrest Street, Columbus, Ohio 43232.

Additionally, on October 15th, 2009, Detective Penwell was again engaged in an internet investigation and observed the same IP address with 57 files with titles indicative of child pornography available for sharing. Based on these facts, a search warrant was obtained for 2730 Moundcrest Street, Columbus, Ohio 43232.

On October 19th, 2009, a search warrant was executed at 2730 Moundcrest Street. Once inside the residence, Detective Penwell was able to identify subject Jeffrey Ables as a person living at the residence. Detective Penwell read Ables his Miranda rights, which Ables waived and agreed to answer questions. During the subsequent interview, Ables admitted to downloading and viewing child pornography using his laptop computer, which he admitted was in his bedroom in the residence. Ables further admitted that he was a registered sexual offender in Fairfield County, and he had been previously arrested after chatting with and attempting to meet for sex what he believed to be a 14 year old girl. Ables admitted to having an addiction to child pornography and that he had been downloading child pornography since he got the computer five years earlier and downloaded peer-to-peer software on it. Ables admitted to using peer-to-peer software to download the 57 videos with titles indicative of child pornography that Detective Penwell viewed on his file list.

Ables' laptop computer was subsequently seized from his bedroom in the residence. An initial forensic review was conducted on Ables' computer and confirmed Ables' admissions. The exam revealed that there were approximately 70 videos and 150 images of child pornography, that is, videos and images depicting sexually explicit scenes such as prepubescent females performing oral sex on adult males and having sexual intercourse with adult males and other minors. The videos and images of child pornography were recovered from the "saved" folder of the peer-to-peer program

> located on the computer's hard drive and from several additional
> locations on the computer's hard drive.

*Guilty Plea Transcript,* pp. 21-23.

The PPA prohibits police from searching for certain types of documents intended for publication:

> (a) Work product materials
>
> Notwithstanding any other law, it shall be unlawful for a
> government officer or employee, in connection with the
> investigation or prosecution of a criminal offense, to search for or
> seize any work product materials possessed by a person reasonably
> believed to have a purpose to disseminate to the public a
> newspaper, book, broadcast, or other similar form of public
> communication, in or affecting interstate or foreign commerce; but
> this provision shall not impair or affect the ability of any
> government officer or employee, pursuant to otherwise applicable
> law, to search for or seize such materials, if–
>
> (1) there is probable cause to believe that the person possessing
> such materials has committed or is committing the criminal offense
> to which the materials relate. . . (. . . a search or seizure may be
> conducted under the provisions of this paragraph if the offense . . .
> involves the production, possession, receipt, mailing, sale,
> distribution, shipment, or transportation of child pornography, the
> sexual exploitation of children, or the sale or purchase of children
> under section 2251, 2251A, 2252, or 2252A of Title 18)[.]

42 U.S.C. 2000aa(a). The PPA was not intended to protect the materials at issue in this case:

> [T]he PPA was enacted to afford "the press and certain other
> persons not suspected of committing a crime with protections not
> provided currently by the Fourth Amendment." S.Rep. No.
> 96–874, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950.
>
> The PPA prohibits the government from seizing certain materials,
> called "work product materials," that are intended for publication. .
> . .
>
> The police can avoid the constraints of the act . . . when the person
> possessing the materials is a criminal suspect, rather than an
> innocent third party.

*Guest v. Leis,* 255 F.3d 325, 340-341 (6th Cir. 2001)(citing 42 U.S.C. § 2000aa-7(b)). The PPA

does not prohibit police from the search and seizure of material where, as here, there is probable

cause to believe that possession of the material constitutes the crime of possession of child pornography. Thus, the PPA does not require the suppression of the evidence obtained from Petitioner's computer.

Moreover, as noted by Respondent, Petitioner had no reasonable expectation of privacy in the peer-to-peer software used by him to access the internet to order to obtain and share child pornography. *See, e.g., United States v. Stallons*, 2011 WL 3206076, at *1 n.3 (E.D. Tenn. July 12, 2011)(citing *United States v. Barrows,* 481 F.3d 1246, 1249 (10th Cir. 2007); *United States v. Stults,* 575 F.3d 834, 843 (8th Cir. 2009)("[N]o court. . . has held that an individual has a reasonable expectation of privacy in files which he has generally made available to the public through peer-to-peer file sharing programs").

Petitioner also invokes the ECPA. That statute regulates the disclosure of electronic communications and subscriber information. However, the suppression of evidence at a criminal trial is not an appropriate remedy even if a violation of the statute has been established. *United States v. Perrine*, 518 F.3d 1196, 1202 (10th Cir. 2008)(citing *United States v. Steiger,* 318 F.3d 1039, 1049 (11th Cir. 2003); *United States v. Smith,* 155 F.3d 1051, 1056 (9th Cir.1998); *Bansal v. Russ,* 513 F.Supp.2d 264, 282–83 (E.D.Pa. 2007); *United States v. Sherr,* 400 F.Supp.2d 843, 848 (D.Md. 2005); *United States v. Kennedy,* 81 F.Supp.2d 1103, 1110 (D.Kan. 2000)); *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011).

In short, Petitioner has not established that a motion to suppress evidence would have assisted his defense. Petitioner has therefore failed to establish the ineffective assistance of counsel based on his attorney's failure to file a motion to suppress.

Petitioner also contends that his attorney improperly advised him in connection with the

plea agreement and Petitioner's sentence. According to Petitioner, his attorney was not aware of Petitioner's criminal history prior to agreeing to the *Plea Agreement*, which was executed on November 14, 2009. On November 11, 2009, Petitioner alleges, his attorney advised that Petitioner would be sentenced to at least 60 months but not more than 84 months incarceration. *Petition,* p. 34; *Reply*, p. 2. Petitioner also alleges that his attorney incorrectly advised that Petitioner could secure an additional 12 month reduction of sentence upon completion of a prison's sex offender management program. *Petition*, p. 34; *Reply*, p. 13. On December 14, 2009, two days prior to entry of his guilty plea, defense counsel told Petitioner that, based on Petitioner's criminal history score, which he had not previously known, Petitioner faced 151 to 188 months incarceration. *Reply,* p. 2.[7] Petitioner nonetheless proceeded to enter a plea of guilty to the *Superseding Information*.

The United States Supreme Court has recognized that criminal defendants are entitled to the constitutionally effective assistance of counsel during the plea negotiation phase. *Missouri v. Frye*, – U.S. –. 132 S.Ct. 1399, 1407 (2012)("In today's criminal justice system. . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.") *See also Lafler v. Cooper,* – U.S. – , 132 S.Ct. 1376, 1386 (2012)*; Humphress v. United States,* 398 F.3d 855, 859 (6th Cir. 2005)(citing *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

> The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of

---

[7]Petitioner had a prior conviction for attempted unlawful sexual conduct with a minor and was a registered sex offender. *Statement of Reasons,* Doc. No. 28, p. 3.

action, the ultimate decision of whether to go to trial must be made
by the person who will bear the ultimate consequence of a
conviction.

*Smith v. United States*, 348 F.3d at 552 (6th Cir. 2003). The United States Court of Appeals for

the Sixth Circuit has described the obligations of defense counsel as it relates to advice during

the plea negotiation stage:

A criminal defendant has a right to expect at least that his attorney
will review the charges with him by explaining the elements
necessary for the government to secure a conviction, discuss the
evidence as it bears on those elements, and explain the sentencing
exposure the defendant will face as a consequence of exercising
each of the options available. In a system dominated by sentencing
guidelines, we do not see how sentence exposure can be fully
explained without completely exploring the ranges of penalties
under likely guideline scoring scenarios, given the information
available to the defendant and his lawyer at the time.

*Id.* at 553 (citing *United States v. Day,* 969 F.2d 39, 43 (3rd Cir. 1992)).

A defendant may challenge the entry of a plea of guilty on the basis that counsel's

ineffectiveness prevented the defendant from entering a knowing and voluntary guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The two-part test of counsel's effectiveness

announced in *Strickland v. Washington*, 466 U.S. at 687, applies to challenges to guilty pleas

based on a claim of ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985);

*Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).  In order to obtain relief on this basis, a

prisoner raising such a claim must first show that counsel's advice did not fall within the range

of competence demanded of attorneys in criminal cases.  *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d

at 884.

The second, or "prejudice" requirement, on the other hand, focuses
on whether counsel's constitutionally ineffective performance

affected the outcome of the plea process.  In other words, in order
to satisfy the "prejudice" requirement, the defendant must show
that there is a reasonable probability that, but for counsel's errors,
he would not have pleaded guilty and would have insisted on going
to trial.

*Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.  Petitioner has failed to meet this standard here.

On November 14, 2009, Petitioner signed a *Plea Agreement* by which he agreed to plead guilty to receipt of visual depictions of child pornography in interstate commerce.  *Plea Agreement*, Doc. No. 12.  The *Plea Agreement,* which was filed on November 23, 2009,  also expressly indicated that Petitioner understood that he faced a mandatory minimum term of five (5) years incarceration and a maximum possible sentence of twenty (20) years in prison.  *Id.* at 2*.*  He agreed to the forfeiture of his computer and all pornographic materials.  In the *Plea Agreement*, Petitioner acknowledged that any estimate of the probable sentencing range made by his attorney, the United States, or the probation office was only a prediction and was not binding on the Court. *Id.*  He would not be permitted to withdraw his guilty plea based on the actual sentence imposed.  *Id.*

At the arraignment on the *Superseding Information*, held on December 16, 2009, *see Transcript of Arraignment,* Petitioner represented that he had fully discussed the charges with his attorney and that he was satisfied with his attorney's representation and advice.  *Id.* at 9. The attorney for the United States summarized the terms of the plea agreement, with which Petitioner agreed.  *Id.* at 10-14.  The statutory sentencing range of 5 to 20 years was again specified.  *Id.* at 15.  Petitioner persisted in his guilty plea.  *Id.* at 16.

COURT: Do you understand that if the sentence is more severe
than you expected, you will still be bound by your guilty plea and

18

will have no right to withdraw it?

DEFENDANT: Yes, sir.

*Id*. at 18. The facts of the case were summarized and Petitioner agreed with those facts. *Id.* at

21-24.

At the February 17, 2010 sentencing, Petitioner acknowledged that he had reviewed with

his attorney, in detail, the *Pre-Sentence Investigation Report. Transcript of Sentencing*, pp. 3-4.

The *Pre-Sentence Investigation Report* indicated a guideline range of 151 - 188 months and the

probation officer  recommended a sentence of 151 months. Based on defense counsel's

objections, the sentencing range was reduced to 108 - 135 months. *Transcript of Sentencing,* p.

9. When asked if he wanted to make a statement, Petitioner stated only that he wanted to be

placed in a treatment program. *Id*. at 14-15. The Court imposed a sentence of 120 months

incarceration. *Id*. at 16. Petitioner now also complains that the sentence did not fall at the low

end of the recommended sentencing range, as had been recommended by the probation officer

when the guideline range was calculated to be 151-188 months. *Reply*, p. 3.

The facts of this case reflect overwhelming evidence of Petitioner's guilt and no realistic

defense, particularly in view of Petitioner's admissions to police and the admissible evidence of

child pornography found on his computer. Petitioner had nothing to gain by proceeding to trial.

By entering a guilty plea, Petitioner obtained a two point reduction for acceptance of

responsibility and a one point reduction for timely notifying the authorities of his intention to

plead guilty. *Pre-Sentence Investigation Report*, at ¶41. Thus, by pleading guilty, Petitioner

substantially reduced his potential prison exposure. Under these circumstances, it is unlikely

that any competent attorney would have advised Petitioner against entering a guilty plea.

A guilty plea must be knowing and voluntary in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 8882, 885 (6ᵗʰ Cir. 1988)(quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of circumstances surrounding the plea. *Id.*

Petitioner's contention that he entered a guilty plea based on his attorney's representation that he would obtain an earlier release after completion of a prison program is incredible in view of the record before the Court.[8] Prior to the entry of his guilty plea, as acknowledged by Petitioner, *see Reply*, p. 2, his attorney advised him that he faced 151-188 months in prison. Petitioner nonetheless proceeded with his guilty plea and indicated at his guilty plea hearing that he understood that he could be sentenced to as much as twenty years in prison. Additionally, Petitioner acknowledged both in the *Plea Agreement* and at the guilty plea hearing that he could not withdraw his guilty plea because he was unhappy with the actual sentence imposed. He expressly denied that his guilty plea was based on any promise not reflected in the *Plea Agreement*.

> The representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is

---

[8]Interestingly, a close family member who held Petitioner's power of attorney advised Petitioner's counsel that Petitioner intended to refuse treatment. *Affidavit of David Graeff*, ¶ 15.

> subject to summary dismissal, as are contentions that in the face of
> the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 74 (1977). Petitioner's claim that his attorney improperly

advised him regarding his sentence, or thereby induced his guilty plea, fails to warrant federal

habeas corpus relief.

Petitioner also appears to argue that his attorney performed in a constitutionally

ineffective manner by failing to argue that his sentence should be reduced based on sentencing

disparities in child pornography cases. *Petition*, p. 35. This claim is plainly without merit

because it is factually incorrect. Defense counsel presented this argument at sentencing.

*Transcript of Sentencing*, p. 7. Although the Court overruled this objection, the Court

represented that it would take the argument into consideration in sentencing. *Id*. at 7-8.

Petitioner also complains that his attorney failed to file an appeal or to consult with him

regarding the filing of an appeal after the sentence was imposed. In his *Petition*, which is

verified, Petitioner alleges that he asked his attorney to speak with him after he was sentenced

and before he was transferred to a federal holding facility but that his attorney failed to do so.

According to Petitioner, his family also attempted to contact his attorney on his behalf, and left

several telephone messages with his attorney, but counsel failed to respond until after the timefor

filing an appeal had expired. *Petition*, p. 33.

Defense counsel, on the other hand, indicates that he waited 45 minutes to speak with

Petitioner immediately after sentencing before being informed that he would not be able to speak

to Petitioner at that time. Defense counsel states in his affidavit that he advised Petitioner of his

appeal rights prior to sentencing and that he would recommend filing an appeal only if his

objections to the sentence were rejected. *Affidavit of David Graeff,* ¶ 9.   In fact, Petitioner's

objections to the sentence, made through his counsel, resulted in a sentence well below that

initially recommended in the *Pre-Sentence Investigation Report.* At sentencing, the trial court

advised Petitioner of his right to appeal and Petitioner indicated he did not want to file an appeal:

> COURT: Mr. Ables, you can appeal your conviction if you believe
> your guilty plea was somehow unlawful or involuntary or if there
> is some other fundamental defect in the proceedings that was not
> waived by your guilty plea.  You also have a statutory right to
> appeal your sentence under certain circumstances, particularly if
> you think the sentence is contrary to law.
>
> If you're unable to pay the costs of an appeal, you may apply to
> this Court for leave to appeal *in forma pauperis*.  That is without
> payment of fees and costs.  Do you understand your rights?
>
> DEFENDANT: Yes, sir.
>
> COURT: You may request the clerk of this court to prepare and
> file a Notice of Appeal on your behalf.  I suggest before . . . you
> answer the next question, that you consult with Mr. Graeff.  Do
> you wish to have the clerk file a notice of appeal for you?
>
> DEFENDANT: No, sir.
>
> COURT: Should you change your mind, you have ten days to file
> your notice of appeal.  Contact your attorney or the clerk of this
> court, through the U.S. Marshal's Office, to file a notice of appeal
> should you change your mind.

*Transcript of Sentencing*, pp. 21-22.   Attorney Graeff states that a close family member, who

held Petitioner's power of attorney, called him on several occasions after sentencing but did not

indicate that Petitioner wanted to file an appeal.   *Affidavit of David Graeff*, ¶¶ 16-18, 22.

The failure to file an appeal after being requested to do so constitutes ineffective

assistance of counsel.

> [E]very Court of Appeals that has addressed the issue has held that
> a lawyer's failure to appeal a judgment, in disregard of the

> defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not. *See Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir.1994); *United States v. Peak,* 992 F.2d 39, 42 (4th Cir.1993); *United States v. Horodner,* 993 F.2d 191, 195 (9th Cir.1993); *Bonneau v. United States,* 961 F.2d 17, 23 (1st Cir.1992); *United States v. Davis,* 929 F.2d 554, 557 (10th Cir.1991); *Williams v. Lockhart,* 849 F.2d 1134, 1137 n. 3 (8th Cir.1988). We agree with those courts and hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment.

*Ludwig v. United States,* 162 F.3d 456, 459 (6th Cir. 1998).

> [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); cf. *Peguero v. United States,* 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Roe v. Flores–Ortega,* 528 U.S. 470, 478 (2000).

In *Roe v. Flores-Ortega, supra,* 528 U.S. at 476, the United States Supreme Court considered whether an attorney may be deemed constitutionally ineffective for failing to file a notice of appeal where the defendant failed to clearly convey his wishes one way or the other.

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, *and making a reasonable effort to discover the defendant's wishes.* If counsel has consulted with the defendant, the question of deficient

performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal .... If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id.,* at 478 (emphasis added) (citation omitted).

[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.... Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

* * *

We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.

*Id.,* at 480-481.

In regard to his verified claim that his attorney failed to file an appeal or to consult with him regarding the filing of an appeal, Petitioner has raised an allegation which, if true, may

warrant relief.  Moreover, the determination of his claim requires resolution of a factual dispute which can be done only in the context of an evidentiary hearing.

The Magistrate Judge therefore **RECOMMENDS** that counsel be appointed to represent Petitioner at an evidentiary hearing on his verified claim that he was denied the effective assistance of counsel because his attorney failed to file an appeal or to consult with him regarding the filing of an appeal after sentencing.

The Magistrate Judge further **RECOMMENDS** that the remainder of Petitioner's claims be **DISMISSED.**

Petitioner's *Motion to Suppress Evidence* and *Request for Discovery*, Docs. 36, 45, are **DENIED.** Petitioner's unopposed *Motion to File Supplemental Brief*, and *Motion to File a Second Supplemental Amendment,* Docs. 49, 52, are **GRANTED**. Petitioner's *Motion to Withdraw Grounds Three and Seven*, Doc. 48, is **GRANTED.** Petitioner's *Request for an Evidentiary Hearing and Appointment of Counsel*, Doc. 51, will await consideration of this *Report and Recommendation* by the District Judge.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


                                       *s/ Norah McCann King*

                                       Norah McCann King

October 30, 2012                             United States Magistrate Judge